UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:24-CV-53-GNS

*[Electronically Filed]*

ROGER PATEL, et al.,                                                PETITIONERS,

VS.

CHANDRESH PATEL, et al.                                     RESPONDENTS.

**MEMORANDUM OF LAW**
**OPPOSING THE MOTIONS TO DISMISS**

Petitioners, by counsel, submit this Memorandum in Opposition to the Motion to Dismiss filed by the Patel Brother Respondents [D.N. 50–1] and joined by Notary Respondents [D.N. 52]. In support, the Petitioners state:

## I.        INTRODUCTION

This case concerns a coordinated scheme of forgery and false notarization in Kentucky designed to fabricate legal instruments and misuse Kentucky's notarial process to divest Petitioners of property abroad. The Respondents—four brothers and a Kentucky notary and surety—forged documents within Kentucky and later used them to assert false ownership in India. Petitioners seek *in personam* relief - compensatory and punitive damages and a declaration that those forged documents are void *ab initio*. Respondents mischaracterize this as a "probate dispute." It is not. No Kentucky estate exists, no *res* is before any court, and Petitioners seek only personal relief for tortious acts originating in Kentucky. Nor do the Respondents' extrinsic materials defeat the Petitioners' standing to bring these claims, as the authenticity of those instruments is also challenged. See October 18, 2025, Affidavit of Deviben Patel, attached hereto as ***Exhibit 1*** and incorporated herein; October 29, 2025, Declaration of Roger Patel, attached hereto as ***Exhibit 2*** and incorporated herein. Respondents' motion fails on every ground.

1

## II.    <u>LEGAL STANDARD</u>

### A.    *12(b)(6) Legal Standard*

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, the Court must construe the complaint in the light most favorable to the plaintiff, consider the pleading as a whole, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Federal pleading standards require a holistic reading rather than a line-by-line dissection. *Id.*

When fraud is alleged, Rule 9(b) imposes a heightened requirement that the complaint specify the who, what, when, where, and how of the alleged misconduct. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003); *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). Even so, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims. *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 895 (6th Cir. 2019).

Moreover, if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. IBM*, 607 F.3d 1102, 1104 (6th Cir. 2010). Because this case remains at the pleading stage, the Court must accept all well-pleaded facts as true and draw every reasonable inference in Petitioners' favor. *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

### B.      12(b)(2) Personal Jurisdiction under Claims for Diversity Jurisdiction

In a diversity action, federal courts apply the forum state's law to determine whether personal jurisdiction exists. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988). Kentucky applies a two-step test: (1) whether the defendant's conduct fits within one of the enumerated categories of Kentucky's long-arm statute, KRS 454.210(2); and (2) whether exercising jurisdiction comports with federal due process. *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (applying *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)). Absent an evidentiary hearing on the matter, district courts must consider the pleadings and affidavits in a light most favorable to the plaintiff, who need only make a prima facie showing of jurisdiction to defeat a 12(b)(2) motion. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

Due process is satisfied when the nonresident defendant has such minimum contacts with the forum that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir. 1991). The Sixth Circuit applies a familiar three-part test: (1) the defendant purposefully availed himself of the privilege of acting or causing consequences in the forum state; (2) the cause of action arises from the defendant's forum-related activities; and (3) the defendant's acts or their consequences have a substantial enough connection with the forum to make jurisdiction reasonable. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014).

### C.      12(b)(1) Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits dismissal only when the Court lacks subject matter jurisdiction. Such motions come in two forms: a facial attack or a factual attack**.** *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

3

A facial attack challenges the sufficiency of the jurisdictional allegations on their face. In that context, the Court must accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, just as it would under Rule 12(b)(6). *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts establishing jurisdiction. By contrast, a factual attack, contests the actual existence of jurisdictional facts. *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). When reviewing a factual attack, the Court may consider evidence outside the pleadings, but only to determine whether jurisdiction exists—not to weigh the merits of the underlying claim. *Gentek*, 491 F.3d at 330. Even then, dismissal is proper only if the movant demonstrates that the claim is wholly insubstantial or frivolous and that no plausible basis for jurisdiction exists.

### D.    *Abstention*

Although federal courts possess broad jurisdictional authority, the Supreme Court has recognized limited, prudential circumstances in which a court may abstain from exercising that jurisdiction. Abstention doctrines are extraordinary and narrow exceptions to the federal courts' "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). These doctrines apply only in exceptional cases—typically where parallel state and federal proceedings risk inconsistent judgments or duplicative litigation.

One such doctrine, known as *Wilton/Brillhart* abstention, arises under the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The statute's permissive language reflects Congress's intent to create "an opportunity, rather than a duty, to grant a new form of relief."

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  Accordingly, the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286.  District courts are thus afforded substantial latitude to determine whether a declaratory judgment will serve a useful purpose in light of the facts before them.  *Id.* at 289.

Courts in the Sixth Circuit apply the five-factor test from *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) to assess whether that discretion should be exercised: : (1) Whether the declaratory judgment would *settle the controversy*; (2) Whether it would serve a *useful purpose in clarifying the legal relations at issue*; (3) Whether it is being used for "*procedural fencing*" or to gain a res judicata advantage; (4) Whether it would increase *friction between* federal and state *courts* or *improperly encroach* upon state jurisdiction; and (5) Whether there exists an *alternative remedy* that is better or more effective.[1]  These factors collectively emphasize that abstention is not the rule but the exception.  Federal jurisdiction should be exercised unless the balance of factors clearly favors deferral to parallel state proceedings or demonstrates that abstention would better serve judicial economy and comity.

## III.    ARGUMENTS IN RESPONSE

### A.    *The Extrinsic Documents Do Not Serve as a Bar to the Petitioners' Claims*

Respondents' reliance on two extrinsic documents—the disputed 1987 Power of Attorney ("POA") and the 1976 "Statement"—to defeat Petitioners' claims is misplaced.  [PageID 1134–36.]  Neither document is properly before the Court on a motion to dismiss, and even if considered, both are factually and legally insufficient to extinguish Petitioners' property interests or standing.

**The Documents' Authenticity and Effect Are Disputed**.  Despite not being in the pleadings, the authenticity and legal effect of the 1987 POA and 1976 Statement are directly

---

[1] Emphasis added for correlation to the analysis later.

disputed and subject to competing affidavits.  See Exhibit 1, Deviben Patel' Affidavit and Exhibit 2, Roger Patel's Declaration.  Petitioners expressly deny signing, executing, or authorizing these instruments.  Under *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992), "the construction as well as the meaning and legal effect of a written instrument … is a matter of law for the court."  But that rule applies only once the authenticity and operative facts surrounding the document are established—questions that are undeniably factual and cannot be resolved on the pleadings.

Even assuming arguendo the documents' validity, neither instrument transfers title or conveys property.  A power of attorney is an agency instrument delegating limited authority, not a conveyance of ownership.  Whether it purported to disclaim an inheritance or authorize later transfers turns on the governing law and factual context of its execution—issues that require a factual record and are therefore inappropriate for disposition under Rule 12(b)(6) or Rule 56.

**The Disputed POA Cannot Be Used to Defeat Standing at the Pleadings Stage.** Respondents' contention that the 1987 POA granted them "immortal" or "perpetual" authority that insulates their acts of forgery and false notarization not only misconstrues the nature of a power of attorney but also implicitly concedes the underlying misconduct. If the POA truly conferred such authority, there would have been no need to forge or falsely notarize subsequent "wills" or "agreements."  This argument is, in essence, a quasi-affirmative defense raised prematurely in a motion to dismiss and must be disregarded.

Courts in the Sixth Circuit consistently hold that dismissal based on an affirmative defense is improper unless the defense is apparent on the face of the complaint.  *Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012).  Petitioners' allegations do not concede, and in

fact directly dispute, the existence, scope, and legal effect of the alleged POA and Statement. Accordingly, consideration of that document at this stage would be premature.

**Summary Judgment Is Likewise Inappropriate**.  Respondents' attempt to convert their Rule 12(b)(6) arguments into a *de facto* summary judgment motion fails.  The authenticity, scope, and legal consequence of the disputed instruments are material factual questions that require discovery.  Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court," the motion must be converted to one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity for discovery and to present pertinent materials. *Wysocki,* 607 F.3d at 1104.  No such opportunity has occurred here.

At this early stage, the Court must accept Petitioners' well-pleaded allegations as true and draw all reasonable inferences in their favor.  *Grow Mich.,* 50 F.4th at 594.  Because the effect, authenticity, and scope of the 1987 POA and 1976 Statement remain disputed issues of fact and law, neither Rule 12(b)(6) dismissal nor Rule 56 summary judgment is appropriate.  The disputed documents do not establish, as a matter of law, that Petitioners lack a property interest or standing. Their authenticity, scope, and legal effect are fact-intensive questions requiring discovery and judicial construction.  Respondents' reliance on them is premature and improper at the pleading stage. The Court should therefore deny dismissal or summary judgment on this ground.

**B.      *Personal Jurisdiction Exists Over Bhulabhai Patel & Amrut Patel*[2]**

Respondents' assertion that this Court does not have personal jurisdiction Bhulabhai Patel (Texas) and Amrut Patel (Ohio) for a diversity action is unavailing because the Petitioners' claims arise directly from the Respondents' Kentucky-based actions that give rise to Kentucky legal claims.  [PageID 1136-37].

---

[2]  This response only addresses the limited challenge to personal jurisdiction under diversity jurisdiction.  Should the Court conclude it has jurisdiction under §1331 or §1367, this analysis becomes moot.

**Petitioners' Claims Fall Squarely Within Kentucky's Long-arm Statute.** KRS 454.210(2)(a)(3) authorizes jurisdiction over a defendant who "causes tortious injury by an act or omission in this Commonwealth." Petitioners easily meet this standard when viewed favorably to them. The crux of action challenges the legal effect of several written instruments – relevant to this analysis, the Will and the Agreement - created in Kentucky, witnessed in Kentucky, and notarized by an officer of the Commonwealth. These documents are alleged to be forged, falsified, or notarized through fraud, rendering them legal nullities under Kentucky law. The Petition alleges that all Respondents – including Bhulabhai Patel and Amrut Patel – acted in concert with Notary Respondent Chandresh Patel to execute or falsely authenticate these documents in Kentucky.

Kentucky has long afforded collateral attacks to notarized written instruments when there is fraud, forgery, or mistake at play in the instrument's creation. KRS 61.060; *Spicer v. Spicer*, 236 S.W.2d 474 (Ky. 1951) (stating that the statute itself expressly allows collateral attack where there is fraud in the party benefited or mistake on the part of the officer*)*; *Duff v. Virginia Iron, Coal & Coke Co.*, 136 Ky. 281, 285 (1910). Any person injured by the violation of any statute, like a governing notarial act or criminal code for forgery, may recover in a civil action. KRS 446.070. Moreover, a concerted event to perform an unlawful act – forgery, false notarization, fraud, even perjury – affords the Petitioners civil recourse. *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC,* 277 S.W.3d 255, 260 (Ky. App. 2008). The Respondents jointly engaged in a scheme planned and executed in Kentucky, including preparing and notarizing fraudulent documents. This conduct establishes conspiracy jurisdiction, creating personal jurisdiction over each participant regardless of physical presence. Cummings v. Pitman, 239 F.3d 463, 466–67 (6th Cir. 2000); Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 58–59 (Ky. 2011). Because the Petitioners' claims arise directly from these Kentucky-based tortious

8

actions and conspiracy, the long-arm statute is satisfied, especially when viewed favorably for the Petitioners.

**The Pleadings Establish Purposeful Availment to Kentucky Law**. On June 1, 2010, the Patel Brothers—including Respondents Bhulabhai and Amrut—appeared before Kentucky Notary Chandresh Patel in Henderson, Kentucky to execute and witness the disputed instruments[3]:

The Last Will and Testament of Laxmiben D. Patel [D.N. 1-7, Page ID 119]

In its relevant parts, this instrument was purportedly signed in person in Henderson, Kentucky, on June 1, 2010, before three witnesses – Respondents- and Notary Chandresh Patel.

> **IN WITNESS WHEREOF**, I, Laxmiben Dahyabhai Patel, hereby set my hand to this last Will and Testament, on each page of which I have placed my initials, on this 1st day of June 2010, at Henderson, Henderson County, Kentucky, Commonwealth of Kentucky.

Extraction from Will, p. 3. As stated in their very own declaration, witnesses and Respondents, *Bhulabhai Patel*, Narendra Patel, and Mangubhai Patel personally appeared before Notary Chandresh Patel in Henderson, Kentucky, on June 1, 2010, to witness Laxmiben's competency and testamentary intent.

> **WITNESSES**
>
> The foregoing instrument, consisting of 4 pages, including this page, was signed in our presence by Laxmiben Dahyabhai Patel and declared by her to be her last Will and Testament. We, at the request and in the presence of Laxmiben Dahyabhai Patel and in the presence of each other, have subscribed our names below as witnesses. We declare that we are of sound mind and of the proper age to witness a will, that to the best of our knowledge the testator is of the age of majority, or is otherwise legally competent to make a will, and appears of sound mind and under no undue influence or constraint.
>
> Under penalty of perjury, we declare these statements are true and correct on this 1st day of June 2010, at Henderson, Henderson County, Kentucky, Commonwealth of Kentucky.

---

[3] KRS Chapter 423 governs notaries and notarial acts. The law in 2010, when these instruments were purported executed and notarized, did not permit a notary to remotely validate a person's identity. The law was updated in 2020 to provide this flexibility for "acknowledged before me" or "appears before me." See KRS 423.150, enacted July 1, 1970 (defining "acknowledged before me"); c.f. KRS 423.300, enacted January 1, 2020 (defining "acknowledged before me" or "appears before me").

Extraction from Will, p. 4.   Notary Chandresh Patel's own declaration asserts the concert of action

that supposedly occurred before him in Henderson, Kentucky on June 1, 2010.

> I, the undersigned, an officer authorized to administer oaths, certify that Laxmiben Dahyabhai Patel, the testator, and ~~M̶g̶ B̶a̶t̶l̶ a̶n̶d̶ n̶R̶ e̶r̶t̶l̶~~ , the witnesses, whose names are signed to the attached or foregoing instrument and whose signatures appear below, having appeared together before me and having been first duly sworn, each then declare to me that the attached or foregoing instrument is the last will of the testator; the testator willingly and voluntarily declared, signed and executed the will or willingly directed another to sign in the presence of the witnesses; the witnesses signed the will upon request by the testator, in the presence and hearing of the testator, and in the presence of each other; to the best knowledge of each witness the testator was, at the time of the signing, eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence; and each witness was and is competent, and of the proper age to witness a will.

Extraction from Will, p. 5.

The Agreement to Delete.  [D.N. 1-6, Page ID 118].

As Notary Chandresh Patel attests, all four Patel Brothers personally appeared before him

on June 1, 2010 to create this document.

> I, the undersigned, an officer to administer oaths, hereby certify that Mangubhai R. Patel, Bhulabhai R. Patel, Amrutbhai R. Patel and Narendrabhai R. Patel, the First Party, and Rukhiben D. Patel, Jadavben D. Patel, Deviben D. Patel, Laxmiben D. Patel, Savitaben R. Patel, Jadavben R. Patel, Ushaben L. Patel and Ritaben L. Patel, the Second Party, whose names and signatures appear above, having appeared before me and having been first duly sworn, each then declare to me that the foregoing instrument is the Agreement to Delete Names from Joint Ownership; the First Party and Second Party willingly and voluntarily declared, signed and executed the Agreement, the First Party and Second Party, at the time of the signing, were eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence; and First Party and Second Party was and is competent and of the proper age to execute the foregoing Agreement.
>
> _____
> Signature of Notary

Extraction from Agreement, p. 5.

By appearing before a Kentucky notary and invoking Kentucky's notarial authority, the Respondents, *including Bhulabhai Patel and Amrut Patel,* purposefully availed themselves of Kentucky law, gaining the legal presumption of authenticity and validity afforded to notarized public documents under KRS 61.060 and KRS 423.320. These documents were then used abroad to affect property interests in India, demonstrating the Respondents' deliberate use of Kentucky's legal mechanisms for their own benefit. Thus, despite residing in other states, Bhulabhai Patel's and Amrut Patel's actions in Kentucky—creating notarized instruments under Kentucky law—constitute sufficient minimum contacts to support personal jurisdiction.

**Petitioners' Claims Arise from the Kentucky Conduct.** The "arising from" prong is satisfied because the Petition challenges the validity of the very documents executed and notarized in Kentucky. But for those Kentucky-created documents, Petitioners' alleged property injury abroad would not have occurred. The wrongful acts giving rise to the claims—false notarization, forgery, and fraudulent certification—occurred within the Commonwealth and are inseparable from Kentucky's notarial process. In *Blessing v. Chandrasekhar*, the Sixth Circuit confirmed that where the defendant's alleged misconduct within Kentucky gives rise to the plaintiff's injury, the statutory nexus requirement is met. 988 F.3d at 902. The same is true here.

**Traditional Notions of Fair Play and Substantial Justice are Not Offended.** Jurisdiction over the Respondents is reasonable and consistent with "fair play and substantial justice." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Having availed themselves of Kentucky's legal system to create notarized public documents, the Respondents cannot now deny accountability in Kentucky courts for alleged fraud and forgery arising from those very acts.

11

Either the Respondents personally appeared before a Kentucky notary, thus submitting to Kentucky's authority, or the documents are forged, in which case the fraud itself occurred in Kentucky through the unlawful notarization process.  In both circumstances, the alleged tortious injury arises from acts in Kentucky, satisfying due process and KRS 454.210(2)(a)(3).  Kentucky has a compelling interest in policing fraud involving its notarial officers and public documents.

Because Bhulbhai Patel and Amrut Patel engaged in conduct within Kentucky, caused alleged tortious injury arising directly from that conduct, and invoked Kentucky's legal protections to create notarized instruments later used for international property transfers, the exercise of personal jurisdiction over them is proper under Kentucky's long-arm statute and is consistent with federal due process.  Accordingly, the 12(b)(2) motion should be denied.

### C.      The Probate Exception Does Not Bar this Court's Subject Matter Jurisdiction

Respondents contend that this Court lacks subject-matter jurisdiction over Counts I-VI because Petitioners challenge the validity of a will, thereby invoking the probate exception to federal jurisdiction.  [PageID 1137–39.]  That argument misstates both the facts and the law. The probate exception is narrowly drawn and applies only when a federal court is asked to exercise *in rem* jurisdiction over property already under the control of a state probate court.  *Marshall v. Marshall*, 547 U.S. 293, 310–11 (2006).  It is critical to the U.S. federal-state comity and domestic *in rem* jurisdiction.  This case presents no such issue.

Petitioners do not ask this Court to probate, annul, or administer any estate.  Instead, they assert *in personam* claims arising from tortious conduct committed in Kentucky—specifically, the forgery, fraud, and false notarization of written instruments, including one styled as a will.  These claims sound in fraud and civil conspiracy and seek damages and declaratory relief against the individuals responsible, not control of any estate property.  The relief sought is compensatory and

12

punitive damages and declaratory relief confirming the fraud – not the administration or distribution of any estate property.

**With No *Res* to Invade, the Probate Exception Does Not Apply.** The Sixth Circuit has emphasized that the probate exception "is of distinctly limited scope." *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017). The exception is "essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall*, 547 U.S. at 311. Thus, the critical inquiry in preserving comity is whether the federal court is being asked to exercise control over a *res* already within a state probate court's custody. *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007).

Here, no such *res* exists. The challenged 2010 will of Laxmiden Patel has never been and cannot be admitted to probate in Kentucky. It is void under Kentucky law. No estate has been opened, and no Kentucky property exists to which a state probate court could exercise jurisdiction. All Respondents have admitted as much in their filings—judicial admissions establishing that no property of Laxmiden Patel is under the custody or control of any Kentucky probate court or any other state probate court, for that matter. Because there is no state estate, no state *res*, and no pending probate, there is no potential for interference with any state court's jurisdiction. Accordingly, the probate exception cannot apply as a matter of law.

**Petitioners Seek *in Personam* Relief for Tortious Conduct Under Kentucky.** This controversy concerns the fraud, forgery, and misrepresentation of notarial certificates and witness declarations in a series of Kentucky instruments. Under Kentucky law, the only means to overcome the presumption of validity afforded to a notarized document is through a direct claim for fraud on the benefiting party, falsification by the officer, or a proceeding against the notarial officer. KRS § 61.060*; Spicer*, 236 S.W.2d 474.

13

Petitioners seek precisely that relief—a declaration that the instruments were forged and fraudulently notarized**,** and damages, both compensatory and punitive, jointly and severally against the actors who participated in the scheme.  These claims are directed toward individual wrongdoing, not estate administration.  They do not seek to disturb, distribute, or control any res held by a probate court, but rather to hold the wrongdoers liable for tortious conduct occurring in Kentucky.

**No Probate in India**.  Assuming, arguendo, that the probate exception applied to international probate matters based on judicial comity, it still has no place in this matter.  The documents at issue were discovered only incidentally in a separate civil proceeding in India, akin to a quiet title and fraud action, not a probate case.  Those proceedings concern ownership disputes over property and address fraudulent conveyances, not testamentary administration.  The forged documents surfaced as evidence of a scheme to manipulate title, not as instruments subject to probate adjudication.  With the Petitioners' claims seeking *in personam* judgment for tort claims of fraud and forgery committed in Kentucky, under Kentucky law, by Kentucky actors, they fall squarely within the Court's jurisdiction and outside the probate exception.  Dismissal under Rule 12(b)(1) is unwarranted.

**This Scheme Involves Non-Testamentary Instruments**.  The Petition concerns three separate documents: (1) the "Agreement to Delete Names from Joint Tenancy," (2) the purported "Will," and (3) Deed.  Even if the Court were to find the will tangentially related to probate subject matter, jurisdiction would independently exist over the Agreement and Deed*,* contracts executed and notarized in Kentucky, which are central to the alleged fraud.  Because all three documents form part of the same fraudulent scheme, judicial economy and the rule of pendent jurisdiction favor retaining the entire case in this Court.

### D.    *Abstention is Not Appropriate*

Respondents alternatively invoke the *Wilton/Brillhart* abstention doctrine, as articulated by the Sixth Circuit in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), urging this Court to decline jurisdiction under the Declaratory Judgment Act. [PageID 1142-44].    That argument is likewise misplaced.    Petitioners do not seek purely declaratory relief but also assert coercive claims for compensatory and punitive damages arising from the same fraudulent scheme.    The declaratory judgment sought merely complements those substantive claims by clarifying the legal status and authenticity of the forged instruments central to this dispute.    Exercising jurisdiction over such claims is entirely consistent with Article III, the Declaratory Judgment Act, and well-settled precedent.    Moreover, the Petition implicates federal questions—including violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and issues arising under the Hague Apostille Convention—as well as Kentucky law governing notarial acts and fraud.    The combination of federal statutory and international-law issues makes abstention particularly inappropriate here.

**Foreign Proceedings are "Not Parallel State Proceedings" Under *Grand Trunk*.**    The *Wilton/Brillhart* abstention doctrine affords district courts discretion in deciding whether to declare rights and other legal relations when there are parallel proceedings in the state courts and the federal court.    *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).    But this is predicated on a parallel state action.    The Respondents request that this Court treat a foreign quiet title and fraud case in India as a "parallel state proceeding" under *Grand Trunk* is both unprecedented and improper.    Like other abstention doctrines, *Wilton/Brillhart* is designed to prevent conflicting rulings between federal and state courts within the United States—not between a U.S. federal court and a foreign sovereign's civil system.    *R.R. Com. of Tex. v. Pullman Co.*, 312

15

U.S. 496, 501, (1941) (discussing the purpose of abstention is to further the harmonious relationship between federal and state courts).  It is categorically inapplicable.

Federal courts may consider international comity separately, but it is not applicable here. Again, this matter does not justify abstention where the dispute centers on conduct and documents governed by Kentucky law and a U.S. Treaty.  The only connection to India is that the fraudulently notarized U.S. instruments are being used there as purported evidence of ownership.  That use does not transform the Indian civil or criminal case into "parallel proceedings" under *Grand Trunk*. This Court alone has the power and responsibility to determine whether Kentucky notarizations and attestations were falsified or forged—a matter wholly within U.S. jurisdiction.

*Grand Trunk* **Favors Exercising Jurisdiction**.  Assuming, arguendo, that the Court applies *Grand Trunk*, the factor analysis supports retaining jurisdiction.

1)  *Settlement of the controversy.*  A declaratory judgment here would conclusively determine the authenticity and validity of the Kentucky instruments.  That determination would resolve the central controversy—whether Petitioners lawfully and willingly relinquished rights through documents forged or falsely notarized in Kentucky.  A federal declaration of invalidity would settle the dispute as to those instruments entirely.

2)  *Useful purpose in clarifying the legal relations at issue.*  Clarification of the documents' validity will directly affect the parties' rights and obligations, both in Kentucky and abroad.  It will prevent further misuse of forged or falsified U.S. instruments in other jurisdictions and clarify Petitioners' legal status regarding their property interests.  The *Declaratory Judgment Act* is designed for precisely this purpose.  *Powell v. McCormack*, 395 U.S. 486, 499–518 (1969).

3)  *Procedural fencing.*  Petitioners filed this action to expose fraud and obtain a declaration of invalidity, not to preempt another domestic forum or secure a tactical advantage.  There is no parallel state litigation to "fence off." This factor favors jurisdiction.

4)  *Friction between courts or improper encroachment upon state jurisdiction.*  There is no Kentucky state case, and therefore no risk of friction or encroachment.  The alleged fraud occurred in Kentucky, involving Kentucky officers, but no Kentucky court- or any other state for that matter- is administering any related estate or *res* or any other related legal matter.

5)  *Alternative remedy.*  No alternative forum can resolve these issues.  Only a U.S. court can determine the authenticity and validity of Kentucky notarial acts and Kentucky instruments

16

executed under Kentucky law and a U.S. Treaty.  The pending foreign civil action cannot adjudicate those issues; it relies on this Court's findings for that purpose.  Thus, this Court is the most appropriate—and indeed the only competent—forum for resolution.

Accordingly, the *Grand Trunk* factors strongly support retaining jurisdiction.

**Court's Jurisdiction to Protect the Integrity of Kentucky's Notarial Process.**  Even if the Court is inclined to consider abstention under *Wilton/Brillhart* sound principles of public policy, it weighs independently in favor of this Court retaining jurisdiction.  Kentucky's notarial system—and the evidentiary trust placed in notarized documents—forms a cornerstone of its public administration and legal process.  *Rogan v. New S. F.S.B. (In re Pelfrey)*, 419 B.R. 10, 17 (B.A.P. 6th Cir. 2009) (discussing the purpose of the presumption stabilizes Kentucky's public records.)  The notary public "serves as a public witness of facts transacted by private parties." Black's Law Dictionary (9th ed. 2009); *also*, *Vancura v. Katris*, 939 N.E.2d 328, 345 (Ill. 2010) (discussing the historical importance of a notary to the public).  The alleged misconduct in this case strikes at the heart of that system, and only a U.S. Court is positioned to address it effectively.

### E.    *Petitioners' State Law Claims are Well Recognized Under Kentucky Law*

Respondents argue that the Petition fails to state a claim upon which relief can be granted. [Page ID 1139-1142].  However, these assertion rests on an overly narrow reading of isolated allegations and fail to account for the entirety of the Petition, including the exhibits.

**Petitioners' Claims are Recognized.**  Kentucky law independently recognizes the Petitioners' causes of action - fraud, civil conspiracy, forgery, and falsification of notarial acts - as valid actionable claims.  See *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (defining the elements of fraud); *Peoples Bank*, 277 S.W.3d at 260–61 (discussing civil conspiracies); *Fletcher v. Wilson*, 500 S.W.2d 601, 605 (Ky. 1973) (discussing fraud in the context of notarial certificates).

**Kentucky Provides an Express Remedy for Fraud and False Notarization.**  Under KRS § 61.060, the presumption of validity afforded to a notary's acknowledgment may be overcome

only by a direct proceeding against the notary or the notary's surety, or upon allegations of fraud by the party benefited or mistake by the officer. *Fletcher*, 500 S.W.2d at 605. This framework reflects the Commonwealth's recognition that notarial authenticity is a matter of public trust. The statute thus authorizes two complementary paths: (1) direct action against the notary and surety, and (2) fraud claims against those who benefited from the false acknowledgment.

The Petitioners have done both. They have filed a direct proceeding against the Kentucky notary and surety responsible for the false certificates, and have alleged fraud and conspiracy against the four Patel Brothers—the parties who knowingly benefited from those false acknowledgments. This structure mirrors exactly the statutory and judicial guidance Kentucky courts have prescribed. *Kendrick v. Deutsche Bank Nat'l Tr. Co. (In re St. Clair)*, 380 B.R. 478, 484 (B.A.P. 6th Cir. 2008) (collecting and applying Kentucky law holding that fraud justifying inquiry into a notarial certificate must relate to the obtaining of the certificate itself and be committed by, or on behalf of, the benefiting party).

**Fraud and Related Claims are Pled with Particularity**. When read in full context, including the attached exhibits, the Petition plainly satisfies both Rule 8(a) and Rule 9(b). It details the who, what, when, where, and how of the fraudulent acts: the identity of each party, the false documents involved, where and when they were executed, and how they were later used abroad to deprive Petitioners of their property rights. These allegations provide the level of specificity that the Sixth Circuit requires for fraud pleading. *Yuhasz*, 341 F.3d at 563; *Dana Corp.*, 547 F.3d at 570.

Under *Iqbal*/*Twombly*, a complaint survives dismissal where the factual content permits a reasonable inference of liability. Petitioners' detailed allegations meet that standard and more. They describe a coherent fraudulent scheme involving forged signatures, falsified notarial acts,

18

and coordinated misrepresentations, all intended to create the illusion of lawful conveyance of property interests abroad. These allegations are not speculative—they are specific, documented, and plausible on their face.

**Intent and Knowledge are Fact Questions, Inappropriate for 12(b)(6).** The Respondents' arguments improperly invite the Court to weigh factual issues—particularly intent and knowledge—that cannot be resolved at the pleading stage. The Sixth Circuit has made clear that "issues of intent and knowledge are questions of fact not appropriate for resolution on a motion to dismiss." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Petitioners' allegations of deliberate falsification, coordinated execution, and knowing misuse of the fraudulent instruments abroad must therefore be taken as true at this stage.

When the Petition is read holistically—as *Tellabs* and *Cahoo* instruct—the detailed allegations and incorporated exhibits tell a clear and particularized story of fraud and forgery. They identify the actors, describe the documents, explain the mechanism of deception, and demonstrate how the false notarizations were used to the Petitioners' detriment. These allegations easily satisfy Rule 9(b) and state plausible claims under Kentucky and federal law. Accordingly, the Petition withstands scrutiny under *Twombly* and *Iqbal*, and the Respondents' Motion to Dismiss—or any attempt to convert it to summary judgment—must be denied.

**F.**     ***Petitioners' Right to Relief Under the Apostille Convention Necessarily Depends on a Substantial Question of Federal Law***

Respondents move to dismiss on the grounds that the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents ("Apostille Convention") is non-self-executing and thus creates no private cause of action. [PageID 1144-46]. That position misstates both the nature of Petitioners' claim and the structure of U.S. treaty law. Petitioners do not seek to enforce the Convention as a private beneficiary but to vindicate a federal duty of authenticity

19

and uniformity that governs the performance of its treaty obligations in the field of foreign document authentication.

Dismissal under Rule 12(b)(1) or (6) is inappropriate unless the complaint fails to allege facts that, taken as true, state a claim "arising under" federal law.  A case arises under federal law when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  This case arises squarely under federal law because it concerns the integrity of official acts that the United States has undertaken to guarantee before the international community.   The falsification of notarial certificates and their acceptance abroad as authentic directly implicate the Nation's foreign-relations interests, and thus fall within the realm of federal common law that governs foreign affairs.

Petitioners allege that Notary Respondents, acting under color of state law as commissioned notarial officers, intentionally falsified certificates, in concert with Respondent Patel Brothers, purporting to verify signatures on instruments later used abroad.  Those falsified certificates were accepted by a foreign authority as genuine, resulting in the wrongful divestment of Petitioners' property interests.  To remedy this wrong, the Petitioners seek declaratory relief that the underlying notarial certificates were invalid because they were not issued in conformity with the Apostille Convention, and that conduct undermines the authenticity and reliability of Kentucky and U.S. public documents for international use.

**The Apostille Convention Creates a Federal Duty Implicating Foreign Affairs**. Although the Apostille Convention is non-self-executing, it binds the U.S. as a matter of federal law to ensure that apostilles attached to public documents are authentic and issued by competent authorities.  This obligation is implemented in every state through commissions issued by

secretaries of state and notaries acting as agents of the federal sovereign in international authentication. As the Supreme Court recognized in *Zschernig v. Miller*, state actions that disturb foreign affairs and international relations fall within the exclusive domain of federal authority. 389 U.S. 429 (1968).

**Federal Common Law Supplies the Rule of Decision.** Where state conduct implicates the Nation's external obligations, courts must apply federal common law to preserve national uniformity. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964). In *Sabbatino*, the Court crafted a federal rule—the act-of-state doctrine—to prevent judicial action that could disrupt foreign relations. The same logic applies in reverse here: when domestic officials' acts presented to foreign governments jeopardize the United States' treaty commitments, federal law must supply a "positive rule of conduct" to ensure compliance. This "inverse act-of-state doctrine" operates not to restrain judicial review but to enforce a federal duty of care owed by state officers acting as international certifiers on behalf of the U.S. The integrity of the notarial system is a matter of national concern; its falsification undermines reciprocal recognition of U.S. documents and the credibility of the Nation's promise under the Convention.

**Petitioners Seek Declaratory Relief, Not Treaty Enforcement**. Petitioners' claims do not depend on a self-executing treaty right. Rather, they invoke the Court's authority to develop a federal rule of decision ensuring state compliance with a federal treaty obligation whose breach directly affects foreign relations. The Declaratory Judgment Act empowers federal courts to declare the rights and legal relations of parties under federal law. Here, the Petitioners seek a declaration that the Notary Respondents' issuance of falsified certificates violated a federal duty derived from the Apostille Convention and that those acts are void of legal effect internationally. Such declaratory relief advances, rather than intrudes upon, the federal government's interest in

21

uniform foreign-document authentication—precisely the type of dispute federal courts are competent to adjudicate. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) (recognizing federal preemption of inconsistent state actions affecting foreign policy).

**Petitioners Plead a Cognizable Claim.**  Even absent a statutory cause of action, the Court may recognize one under federal common law where (1) the claim implicates a uniquely federal interest, and (2) Congress has not provided an alternative remedial scheme.  *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  With the authenticity of the U.S. notarial acts used abroad being squarely within foreign affairs and there being no remedy available, federal common law is appropriate.  Recognition of a declaratory remedy here would not intrude on legislative prerogatives but would safeguard the United States' international credibility.

**Public Policy Supports**.  Enforcing the Apostille Convention serves compelling public policy interests.  Kentucky, as a designated "Competent Authority" under the Convention, and the United States bear a sovereign duty to ensure that its commissioned notaries comply with law and protect the evidentiary integrity of its official acts.  Allowing this case to proceed vindicates those intertwined federal and state interests and preserves international confidence in the authenticity of Kentucky public documents.  To dismiss these claims would allow parties who exploit fraudulent acknowledgments to weaponize the presumption of authenticity while evading the scrutiny that both federal and state law demand.

In sum, the Respondent's falsification of notarial certificates used abroad directly undermines the United States' obligations under the Apostille Convention and injures Plaintiff's property rights through international misuse.  The complaint asserts a claim arising under federal common law, grounded in the Nation's foreign-affairs duty to maintain the authenticity of its public documents.  Federal question jurisdiction exists, and Plaintiff has stated a claim for

declaratory relief under § 2201 and the federal common law standard of care derived from the Apostille Convention.  Dismissal is therefore improper.

## G.    RICO Claims Withstand 12(b)(6) Scrutiny

Respondents seek dismissal of Petitioners' RICO claims based on three primary, but misguided, arguments—first, that the Petition fails to allege a "domestic injury," second, that it fails to plead a cognizable "enterprise," and third, that it fails to meet pleading requirements.  None of these arguments withstands scrutiny when the Petition is read as a whole and in the Petitioners' favor.

### (1)    <u>Domestic Injury</u>

Respondents contend that Petitioners allege only a foreign injury and therefore lack standing under *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016).  [PageID 1147-48].  That argument ignores subsequent Supreme Court authority rejecting a rigid "situs-of-property" rule.  *Yegiazaryan v. Smagin*, 599 U.S. 533, 542 (2023) (rejecting "a categorical rule that injury to foreign property is necessarily foreign"); *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 606 (2025) (reaffirming a case-specific, circumstances-based inquiry).  The pleaded facts—accepted as true at this stage—demonstrate that the racketeering conduct originated, was executed, and caused economic harm within the United States.  The forged Kentucky notarizations were the linchpin of the scheme, giving false legal authenticity to documents used abroad.  The injury was realized domestically, where Petitioners—U.S. citizens and residents—also experienced the economic consequences.

**Circumstances Determine the Petitioners' Domestic Injury**.  As *Yegiazaryan* and *Horn* make clear, courts must examine "the circumstances surrounding the injury," not the property's physical location.  *Yegiazaryan*, 599 U.S. at 542.  When the wrongful deprivation of foreign property causes domestic economic harm to U.S. citizens, the injury is domestic.  *Id*.  Under this

functional test, domestic injury is found when (1) the plaintiff resides and holds assets in the U.S., (2) the scheme targets those U.S. interests, and (3) the economic effects are felt here. *Id*.

Here, Petitioners are U.S. citizens and residents. Their foreign real estate holdings form part of their U.S. taxable estates and overall wealth. The term "business or property" in § 1964(c) is to be construed broadly to include "any valuable right considered as a source or element of wealth." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979). U.S. law recognizes and taxes a citizen's worldwide assets and income. *Cook v. Tait*, 265 U.S. 47, 56 (1924); Treas. Reg. § 1.1-1(b) (1956); *Cinelli v. Comm'r*, 502 F.2d 695, 697 (6th Cir. 1974). Under 26 U.S.C. § 61(a) and § 2031(a), a U.S. citizen's gross estate includes "all property, real or personal, tangible or intangible, wherever situated." Thus, Petitioners' ownership interests in the Indian real estate are part of their U.S. property interests for purposes of § 1964(c).

The fraudulent Kentucky notarizations directly caused the deprivation of those interests, diminishing Petitioners' U.S.-based wealth just as the theft of a foreign bank account reduces a U.S. resident's domestic estate value. The financial consequences—loss of net worth, collateral, and taxable assets—were realized and accounted for in the United States. *Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) (domestic injury found where the economic impact of foreign theft was felt in the U.S.); *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3d Cir. 2018) (an injury is domestic with economic harm suffered in the U.S. despite foreign operations).

The circumstances are distinctly U.S.-centered: petitioners are U.S. citizens; the documents were created and notarized under Kentucky law; and the forged instruments were circulated through U.S. mail and electronic communications. The documents' validity derived exclusively from Kentucky's notarial framework—legal presumptions unique to U.S. law that gave the scheme credibility abroad. But for those domestic legal presumptions, the fraud would have failed. The

24

misuse of Kentucky's notarial process—an official act of U.S. authority—subverted the protections of a U.S. governmental function.  That alone suffices to allege a domestic injury. *Yegiazaryan*, 599 U.S. at 546.

Because Petitioners are U.S. citizens who suffered economic harm in the United States from the misuse of a U.S. legal mechanism, their pleadings adequately allege a domestic injury to business or property under § 1964(c).

### (2)      Enterprise

Respondents' assertion that the Petition fails to allege a plausible "enterprise" under § 1962(b) similarly misreads both the statute and the pleadings.

**Pleadings Describe a Cohesive and Continuous Association-in-Fact Enterprise**.  Under § 1962(b), an enterprise includes "any … group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It need not be a legitimate business.  *U.S. v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).  An association-in-fact enterprise exists where individuals share a common purpose, maintain relationships, and operate with continuity. The Petition details exactly that. Chandresh Patel, acting as a commissioned Kentucky notary, collaborated for nearly a decade with the four Patel Brothers to fabricate, authenticate, and circulate forged notarized documents to divest Petitioners of their property interests.[4]  The pleadings, taken as a whole—including attached exhibits—identify each participant's role: Chandresh Patel executed the false notarizations; the other respondents falsely witnessed or signed documents and used them to complete fraudulent conveyances abroad; and certain defendants advanced the scheme by filing fabricated criminal reports and transmitting false documents via

---

[4]  As previously stated, the Will and Agreement were only discovered in 2022 during the Petitioners Indian conflict and it is reasonably believed that those documents were not executed in 2010 but more recently.

U.S. mail and electronic means. This structured, long-term association with a defined purpose and hierarchy satisfies *Boyle's* enterprise elements.

**The Enterprise is Distinct from the Persons.** Contrary to Respondents' argument, the Petition does not conflate the enterprise with the racketeering acts. The enterprise is the association-in-fact—Chandresh Patel's misuse of Kentucky notarial authority in concert with the four Patel Brothers' coordinated exploitation of that authority for personal enrichment. The predicate acts—false notarizations (§ 1028), mail fraud (§ 1341), and wire fraud (§ 1343)—were the means by which the enterprise operated, not the enterprise itself. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (enterprise distinct where association's ongoing structure enables commission of multiple predicate acts); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (discussing the continuity plus relationship test).

**§ 1962(b) Extends Beyond Legitimate Business Takeovers**. Respondents' "ruffians-take-over-a-store" model misstates § 1962(b)'s reach. The Sixth Circuit has held that the statute applies equally where defendants use racketeering to maintain control over an ongoing association or mechanism of power, not only to infiltrate a lawful enterprise. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 886 (6th Cir. 1990). Here, the enterprise was maintained through the continued exploitation of Chandresh Patel's notarial commission and coordinated acts of fraud. Control was preserved by a consistent pattern of false notarizations spanning nearly a decade. Those facts plausibly state a claim under § 1962(b). Taken together, the pleadings establish an organized, continuous, and purposeful enterprise distinct from the defendants themselves. This is precisely the type of long-running, coordinated misconduct RICO was enacted to reach. Viewing the pleadings in Petitioners' favor, dismissal on this ground is unwarranted and must be denied.

### (3)    Pleadings

Respondents' final challenge—that the Petition fails to meet heightened pleading standards—is unavailing. It results from reading the allegations in isolation rather than as a whole.

**The Claim Adequately Pled**.  A civil RICO claim requires (1) a pattern of racketeering activity; (2) use of that pattern to acquire or maintain control of an enterprise; (3) an enterprise affecting interstate or foreign commerce; and (4) injury to business or property caused by the violation. 18 U.S.C. § 1964.

The Petition meets each element. It identifies three distinct predicate acts within a ten-year period—each involving a forged or fraudulently notarized instrument executed under Kentucky law—and plausibly alleges violations of §§ 1028, 1341, and 1343.  It also alleges that these forged documents were transmitted through U.S. commercial carriers and electronic communications to foreign jurisdictions, invoking interstate instrumentalities and affecting commerce.  The acts share common participants, purposes, victims, and methods, satisfying the relatedness and continuity required for a "pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240–42 (1989).

The Sixth Circuit likewise recognizes that § 1962(b) applies where defendants use racketeering to maintain control over an ongoing association or mechanism of power. *Dana Corp.*, 900 F.2d at 886.  The continued exploitation of a Kentucky notarial commission to advance coordinated fraud over nearly a decade satisfies this standard and states a plausible claim.

**Rule 9(b) is Satisfied.**  Rule 9(b) requires that fraud allegations specify the time, place, and content of the misrepresentation, the scheme, the defendants' intent, and the resulting injury. *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008).  Read in its entirety, the Petition does precisely that.  For the same reasons addressing the arguments related to the state

27

law claims in Section E, *supra*, the Petition's allegations clearly apprise Respondents of the fraudulent conduct at issue and satisfy Rule 9(b). *Yuhas.,* 341 F.3d at 563.

In sum, the Petition alleges a domestic injury, a cohesive and continuous enterprise, and a detailed pattern of racketeering acts that satisfy both substantive and pleading standards under RICO. The Respondents' challenges misread both the statute and binding precedent. When the well-pleaded allegations are accepted as true—as they must be on a motion to dismiss—the RICO claims are legally and factually sufficient. The motion to dismiss should therefore be denied.

## IV.    CONCLUSION

The Petition properly alleges actionable misconduct within this Court's jurisdiction and sets forth detailed facts supporting each claim.  When construed in Petitioners' favor, the pleadings demonstrate a coordinated scheme of forgery, false notarization, and conspiracy originating in Kentucky.  Respondents' Motions to Dismiss [D.N. 50–1 and 52] are legally unsupported.

- The disputed 1987 and 1976 documents, not attached or referenced in the pleadings, cannot bar claims at the pleading stage.
- Personal jurisdiction exists over all Respondents.
- The probate exception and abstention doctrines do not apply.
- Petitioners' fraud, conspiracy, and forgery claims are well pled.
- The Apostille and RICO claims raise substantial federal questions.

For these reasons, the Respondents' Motion to Dismiss must be **DENIED**.

RESPECTFULLY SUBMITTED, this 5th day of November, 2025.

/s/ Daniel N. Thomas
Daniel N. Thomas
Mary E. Jocelyn
THOMAS, ARVIN & ADAMS, PLLC
*Counsel for Petitioners*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the Response in Opposition to Motion to Dismiss Second Amended Complaint has been filed with the clerk of the Court this 5th day of November, 2025, using the CM/ECF system, which will send an electronic notice to the following:

John David Meyer (KBA 87353)
Meyer & Meyer, LLP
608 Frederica Street/Suite 301
Owensboro, KY 42301

Mr. Thomas N. Kerrick
KERRICK BACHERT PSC
1411 Scottsville Road
P.O. Box 9547
Bowling Green, Kentucky 42101

s/ Daniel N. Thomas
Daniel N. Thomas
THOMAS, ARVIN & ADAMS, PLLC