UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:24-CV-53-GNS

*[Electronically Filed]*

ROGER PATEL, DEVIBEN PATEL,
GREG PATEL, as Power of Attorney for DEVIBEN PATEL,
RITA L. PATEL, and USHA PATEL,                                    PETITIONERS,

VS.

CHANDRESH PATEL, et. al.                                          RESPONDENTS.

### DECLARATION OF MARY E. JOCELYN

I, Mary E. Jocelyn, declare as follows:

1)       I am an attorney licensed in Kentucky and co-counsel for Petitioners in this matter. I submit this declaration in response to the Court's May 28, 2026, Show Cause Order.

2)       I have reviewed the Court's Order carefully.  I understand the seriousness of the Court's concerns regarding inaccurate citations, quotations, parentheticals, and characterizations of authority in the Memorandum of Law Opposing the Motions to Dismiss [D.N. 61], referred to as Petitioners' Response to Respondents' Second Motion to Dismiss within the Court's May 29th Order.  I regret that inaccurate or improperly cited material made it into the eFiled Memorandum. I did not intend to mislead the Court or opposing counsel.  For that, I apologize.

3)       I have worked alongside Mr. Thomas in this matter, first as a law clerk and later as co-counsel after my admission to the Western District of Kentucky following my admission to the Kentucky Bar in fall 2024.  I have performed much research, writing and preparation work throughout the entirety of this case, including the Response at issue, and other filings.

4)       Mr. Thomas and I collaborated on research and legal theories throughout the case. Mr. Thomas maintained tactical control and overall strategy, discussed relevant case law and

1

doctrines, edited drafts that I prepared, and provided case law that he believed was relevant based on his experience and his review of treatises and case law, including materials relating to civil RICO, federal jurisdiction, and other issues relevant to this matter.

5)      The Memorandum at issue was prepared by building on prior work product and research developed throughout the case, including earlier briefing relating to Petitioners' Motion for Leave to File Second Amended Complaint [D.N. 38], Reply in Support [D.N. 45], and the Second Amended Complaint [D.N. 49].  In preparing the response to Respondents' Second Motion to Dismiss, I incorporated prior arguments, revised existing draft language, expanded case law discussions, developed research notes into argument sections, and added or revised sections addressing RICO, the Apostille Convention, and other issues raised by the Second Motion to Dismiss.

6)      My current understanding is that the errors identified by the Court resulted from a flawed drafting, editing, and final verification process.  The filing combined prior briefing, research notes, case summaries, new case law, attorney comments, and revised legal theories. During final revisions, portions of earlier drafts were shortened, reorganized, or deleted, including some supporting cases, explanatory sentences, and limiting language.  I did not adequately complete a final source-by-source verification after those revisions were made.

7)      My use of artificial intelligence ("*AI*") tools in this matter was predominately to clarify draft language, combine my writing with Mr. Thomas's edits or comments into a more consistent tone, shorten or refine repetitive sentences or paragraphs, reduce passive voice, and improve the professionalism and organization of drafts.

8)      I also used AI tools at times as a sounding board for my own understanding for complex legal issues before discussing them with Mr. Thomas and to test our arguments.  AI tools

can be helpful in identifying weaknesses in arguments, possible follow-on implications of those arguments, and consideration whether additional research was needed to address those weaknesses.

9) I also now understand that AI tools create particular risks if edited language, summaries, parentheticals, quotations, or citations are not rechecked against the original authorities before filing. I understand that any authority ultimately cited to the Court must be independently verified against the original source.

10) In this instance, I failed to adequately ensure that every citation, quotation, parenthetical, page reference, and legal proposition in the final eFiled version was checked against the original authority. That failure was mine as I drafted, edited, condensed, or prepared the final affected material for Mr. Thomas's review.

11) At the time the response was being prepared, I was transitioning from part-time work back to full-time work after maternity leave. Some of the drafting and editing occurred late at night while I was caring for my infant. I do not offer those circumstances as an excuse. I understand that the duty to verify legal citations, quotations, and parentheticals applies regardless of deadline pressure, personal circumstances, or workload. I include this only as part of the factual context in which the flawed drafting and review process occurred.

12) Conforming the response to the applicable page limitation was difficult. During that process, I used placeholders or draft shorthand while working through arguments to help me be mindful of the page limits during revisions. I used AI tools to help shorten and make draft language more direct. I now understand that this practice creates risks and that I needed to recheck the final version against the original authorities with particular care, which I did not do so

3

adequately in this matter. To the extent any such material remained in the eFiled response, that reflects a failure in my final review process.

13) I am also reviewing whether version-control issues contributed to any discrepancy between drafts. Around the same time, I experienced PACER-upload issues from my computer in connection with other filings, and office staff assisted with this filing. I do not presently know whether any network-sync or version-control issue contributed to the Memorandum at issue. I include this only because I am reviewing all process issues that may have affected the final eFiled version. Regardless, I did not verify the final document after it was saved to PDF and before it was eFiled.

14) Addressed below is each item identified in the Court's Order based on my present reconstruction.

   A)   **Page 8 - *Cummings v. Pitman*, 239 F.3d 463, 466-67 (6th Cir. 2000).**

"This conduct establishes conspiracy jurisdiction, creating personal jurisdiction over each participant regardless of physical presence. Cummings v. Pitman, 239 F.3d 463, 466–67 (6th Cir. 2000); Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 58–59 (Ky. 2011)."

This citation was erroneous. I believe the erroneous citation may have originated from my notes relating to *Cummings v. Pitman*, 239 S.W.3d 77 (Ky. 2007), which was later overruled in part by *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). Conspiracy personal jurisdiction was a late addition to my research. Mr. Thomas and I discussed the issue only minimally, and my understanding is that we ultimately decided not to rely on that argument in the final brief. My present understanding is that it resulted from a combination of late-stage research notes, draft language, and inadequate final verification. I do not presently know with certainty how the erroneous federal citation remained in or entered the final eFiled version, but I recognize that the citation is erroneous.

   B)   **Page 19 - *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995): "issues of intent and knowledge are questions of fact not appropriate for resolution on a motion to dismiss."**

The Memorandum cited *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), for the proposition that "issues of intent and knowledge are questions of fact not appropriate for resolution on a motion to dismiss."

This was an inaccurate quotation formatting and imprecise use of the cited authority. Based on my review, I believe this error resulted from my effort to shorten and apply my explanation of the case without adequately checking the final sentence, quotation marks, and pagination against the original decision. I had used *Miller* in my discussion of pleading an intentional tort and the circumstances in which dismissal was inappropriate. The language that appears to have influenced my drafting was the court's discussion that "whether defendants' actions were extreme and outrageous should have been a question for the jury." *Miller*, 50 F. 3d at 377. I failed to ensure that the final wording, quotation marks, and cited page precisely matched the actual decision and the proposition for which the case was used. I recognize the seriousness of attributing quoted language to a court decision when that exact language does not appear in the cited authority. This was a failure of final verification.

C)      **Page 20 - *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005): "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."**

The Memorandum cited *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), for the quoted proposition that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."

This involved inaccurate quotation formatting and imprecise attribution. I believe this language was influenced by my Federal Courts law school notes and doctrinal materials concerning the well-pleaded complaint rule, substantial federal question jurisdiction, and related cases, including and *Grable* and where *Grable* briefly discusses *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) at that pagination. The phrasing was familiar to me from my notes and course materials, and it tracked my understanding of the doctrine. That familiarity contributed to my failure to scrutinize the final quotation, pagination, and attribution. Ultimately, I

5

failed to verify that the final quoted language and citation were precise. I understand that doctrinal familiarity does not excuse inaccurate quotation or attribution.

> D)   **Page 21 - *Yegiazaryan v. Smagin*, 599 U.S. 533, 542 (2023) (rejecting "a categorical rule that injury to foreign property is necessarily foreign").** [1]

The Memorandum cited *Yegiazaryan v. Smagin*, 599 U.S. 533, 542 (2023), with a parenthetical stating that the Court rejected "a categorical rule that injury to foreign property is necessarily foreign."

This involved inaccurate quotation formatting and imprecise pagination. I used this authority in connection with RICO and the domestic-injury analysis as it could be distinguished from *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016). I believe I used AI tools to shorten and make more direct a paragraph distinguishing *Yegiazaryan* from *RJR Nabisco*. In that process, language from my own draft explanation appears to have been compressed into a parenthetical that included quotation marks. I did not adequately check the final parenthetical, quotation marks, and pagination against the decision before filing. Because the parenthetical tracked my general understanding of the case, I failed to scrutinize whether the wording and attribution were precise.

> E)   **Page 24 - *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979): "any valuable right considered as a source or element of wealth."**

> "The term 'business or property' in § 1964(c) is to be construed broadly to include 'any valuable right considered as a source or element of wealth.' *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979)."

The Memorandum cited *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979), for the quoted proposition that the term "business or property" includes "any valuable right considered as a source or element of wealth."

This involved inaccurate quotation formatting and imprecise pagination. I selected *Reiter* because of my understanding that civil RICO treatise that "business or property" language is informed by cases interpreting similar language in the Clayton Act. In articulating this explanation and

---

[1] This error is on page 23.

shortening the discussion, including through AI tools, I believe language from my draft explanation or notes was converted into a sentence or parenthetical that used quotation marks. Because I remembered the general case content and the point I was trying to make, I did not adequately scrutinize the final quotation, page citation, or attribution before filing.

15) I recognize that even where the general legal point was intended in good faith, the final eFiled language still had to be accurate in quotation, citation, and attribution.

16) I have learned from this incident that final verification must occur after, not merely before, substantial shortening, AI tools, page-limit revisions, and PDF preparation. Going forward, I will not include or approve any quotation, parenthetical, or case proposition unless it has been checked against the original authority in the final form in which it will be eFiled. I will also use a final cite-check procedure for court filings that requires source-by-source verification of every quotation, parenthetical, citation, and legal proposition after any substantial edit, reorganization, or page-limit reduction.

17) I respectfully apologize to the Court and opposing counsel for the inaccurate material and for the burden this has imposed. I understand that this was a serious failure in the final review process.

18) I understand these circumstances do not excuse the errors. I respectfully ask the Court to consider them, together with my lack of intent, and my remedial procedures, in determining whether sanctions are necessary to deter future conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of June 2026, at Hopkinsville, Kentucky.

Mary E. Jocelyn, KBA No. 100901
Associate Attorney
THOMAS, ARVIN & ADAMS, PLLC

7