UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00053-GNS

ROGER PATEL et al.                                                    PETITIONERS

v.

CHANDRESH PATEL et al.                                               RESPONDENTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Respondents' Motion to Dismiss (DN 50) and Respondents' Motion to Dismiss (DN 52).  The motions are ripe for adjudication.

### I.        STATEMENT OF FACTS AND CLAIMS

This is a civil action arising out of an international estate dispute.  Petitioners Roger Patel ("Roger"), Deviben Patel ("Deviben"), Greg Patel ("Greg"), as attorney-in-fact for Deviben, Usha Patel ("Usha"), and the Estate of Rita L. Patel[1] ("Rita") (collectively, "Petitioners"), allege that Respondents Chandresh Patel ("Chandresh"), Maheshbhai Patel ("Maheshbhai"), Narendra A. Patel ("Narendra"), Mangubhai Patel ("Mangubhai"), Bhulabhai R. Patel ("Bhulabhai"), and Amrut Patel ("Amrut") (collectively, "Respondents") participated in the forgery and false notarization of two documents—an "Agreement to Delete Names from Joint Ownership" (the "Agreement") and the "Last Will and Testament of Laxmiben Dahyabhai Patel" (the "Will").  (1st Am. Pet. ¶ 1, DN 16).[2]

---

[1] The Court granted Petitioners' motion to substitute the Estate for Rita following Rita's death. (Order, DN 64).

[2] Petitioners' Second Amended Petition (DN 49) incorporates their First Amended Petition (DN 16) by reference.  Therefore, although the Second Amended Petition is the operative pleading, this Memorandum Opinion and Order will cite both.

1

Petitioners allege that they are heirs of Dahyabhai Patel ("Dahyabhai") and his wife, Jeliben Patel ("Jeliben"), and claim ownership interests in real estate located in the Republic of India (the "Property") which is the subject of ongoing partition litigation in that country. (1st Am. Pet. ¶¶ 16, 21). Deviben is alleged to be the only surviving daughter of Dahyabhai and Jeliben, and she asserts a 20% ownership interest in the Property. (1st Am. Pet. ¶¶ 17, 19). Roger, Rita, and Usha are the children of Dahyabhai's deceased son, Lallubhai Patel ("Lallubhai"), and claim an undivided interest in their father's 40% share. (1st Am. Pet. ¶ 18). Greg is the son of Deviben and acts as her attorney-in-fact. (1st Am. Pet. ¶ 6).

Laxmiben Patel ("Laxmiben")[3] was a daughter of Dahyabhai and Jeliben and allegedly held a 20% share in the Property. (1st Am. Pet. ¶ 40). The Will purports to leave her interest to four male grandchildren of Dahyabhai—Narendra, Bhulabhai, and Amrut—who are also said to have witnessed its signing in Kentucky. (1st Am. Pet. ¶ 37). Petitioners, however, allege that the Will was not properly signed, acknowledged, or witnessed, and is invalid under Kentucky law. (1st Am. Pet. ¶ 41).

Additionally, Petitioners allege that on or around June 1, 2010, in Kentucky, Chandresh notarized the Agreement, which bears the signatures of Rita, Usha, and Deviben—signatures that Petitioners contend are forged. (1st Am. Pet. ¶¶ 29-30). Petitioners allege that the Agreement was falsely certified as executed in the presence of the notary, and that the three Petitioners did not sign the document at all. (1st Am. Pet. ¶ 30).

Finally, Petitioners assert that both the Will and Agreement have been submitted in litigation in India and relied upon to defeat Petitioners' claims to title in that jurisdiction. (1st Am. Pet. ¶¶ 1, 31, 40). Petitioners claim that Chandresh's father, Maheshbhai, served as the surety for

---

[3] Petitioners sometimes spell her name "Laxmiden." (*See, e.g.*, 1st Am. Pet. ¶ 1).

Chandresh's notary bond and is jointly liable for Chandresh's alleged misconduct. (1st Am. Pet. ¶ 52). Petitioners allege that all six Respondents knowingly participated in a conspiracy to deprive them of their ownership rights. (1st Am. Pet. ¶¶ 49-50).

Petitioners filed this action asserting claims of fraud, civil conspiracy, and willful misconduct, seeking declaratory relief and damages related to the alleged acts. (1st Am. Pet. ¶¶ 27-57). Petitioners then filed the Second Amended Petition, adding claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Hague Apostille Convention ("Apostille Convention"). (2d Am. Pet. ¶¶ 58-84, DN 49). Respondents move to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and the failure to state a claim. (Resp'ts' Mot. Dismiss, DN 50; Resp'ts' Mot. Dismiss, DN 52).

## II.   DISCUSSION

### A.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). The petitioner bears the burden of proving jurisdiction. *See id.*

Petitioners assert that they have subject matter jurisdiction, specifically diversity, federal question, and supplemental jurisdiction. (2d Am. Pet. ¶ 13; 1st Am. Pet. ¶ 13). Respondents argue

3

that (1) the Court does not have jurisdiction because the probate exception applies and (2) the Court should decline to exercise jurisdiction under the Declaratory Judgment Act.[4]

### 1.    *Probate Exception*

An exception to federal jurisdiction—known as the probate exception—provides "that a federal court has no jurisdiction to probate a will or administer an estate . . . ." *Markham v. Allen*, 326 U.S. 490, 494 (1946) (citations omitted).  This exception is "narrowly limited to three circumstances:  (1) if the plaintiff 'seek[s] to probate . . . a will'; (2) if the plaintiff 'seek[s] to . . . annul a will'; and (3) if the plaintiff 'seek[s] to reach the *res* over which the state court had custody.'" *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (alterations in original) (citation omitted); *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006) ("Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.").  "A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks." *Wildasin v. Mathes*, No. 3:14-CV-02036, 2019 WL 2269878, at *4 (M.D. Tenn. May 28, 2019) (citing *Chevalier*, 803 F.3d at 801).  "As the Sixth Circuit has noted, 'the probate exception is not easily applied to particular cases.'" *Wildasin v. Mathes*, No. 3:14-2036, 2018 WL 4677848, at *6 (M.D. Tenn. Sep. 21, 2018) (quoting *Uzielli v. Frank*, 137 F. App'x 795, 799 n.1 (6th Cir. 2005)); *Dragan v. Miller*, 679 F.2d

---

[4] "[C]ourts in the Sixth Circuit have 'inconsistently applied both Rule 12(b)(1) and Rule 12(b)(6) to motions to dismiss brought pursuant to . . . the *Grand Trunk* factors.'  However, because dismissal pursuant to the *Grand Trunk* doctrine would not constitute a judgment on the merits, Rule 12(b)(1) 'is the more appropriate vehicle for dismissal.'" *Awesome Prods., Inc. v. JoySuds LLC*, No. 25-50-DLB-CJS, 2025 WL 3562610, at *5 (E.D. Ky. Dec. 12, 2025) (internal citations omitted) (quoting *OMT Addiction Ctrs., LLC v. Freedom Healthcare Props. of Tex., LLC*, 770 F. Supp. 3d 1090, 1101-02 (M.D. Tenn. 2025)).

712, 713 (7th Cir. 1982) ("The probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction.").

Respondents assert that the second circumstance—seeking annulment of a will—applies here because Petitioners ask the Court to enter a declaratory judgment that "confirms the will to not have been signed and executed under Kentucky law, not timely filed to be admitted to probate in Kentucky,[5] and has no validity to be represented as the Last Will and Testament of Laxmiben Dahyabhai Patel" in Count II of their petition. (Patel Bros.' Mem. Supp. Mot. Dismiss 14 (quoting 1st Am. Pet. ¶ 42)). Indeed, the Sixth Circuit has held that the probate exception bars petitioners from seeking "a declaration that [the decedent's] probated will be declared invalid[.]" *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017) (alterations in original) (citation omitted); *id.* at 437 ("Plaintiffs accept (as they must) the validity of [the] will . . . ."); *In re Brown*, 484 B.R. 322, 330-31 (Bankr. E.D. Ky. 2012) ("The declaratory relief sought by the Debtor concerning the validity of the New Will and the Trustee's agreement as part of the settlement that the New Will is invalid falls squarely into the probate exception removing from the federal courts the ability to annul a will. The Movants argue that invalidating the New Will has nothing to do with probating the will and does not interfere with property in the custody of a probate court. They ignore the fact that the probate exception also applies to annulling a will.").

Petitioners argue that the probate exception does not apply because they are pursuing *in personam* claims. (Pet'rs' Resp. Resp'ts' Mot. Dismiss 12-14, DN 61 [hereinafter Pet'rs' Resp. Patel Bros.' Mot. Dismiss]). Petitioners' characterization of their claims as *in personam*, however, does not allow them to skirt the probate exception because "the substance of [Petitioners'] claims

---

[5] Respondents agree that the will has not been probated in Kentucky. (Resp'ts' Mem. Supp. Mot. Dismiss 14, DN 50-1 [hereinafter Patel Bros.' Mem. Supp. Mot. Dismiss]).

and [their] ultimate relief is what matters." *Carroll v. Hill*, 559 F. Supp. 3d 645, 654 (N.D. Ohio 2021) (citing *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015)), *aff'd*, 37 F.4th 1119 (6th Cir. 2022).

Next, Petitioners assert that the probate exception does not apply because the Will has not been probated, so there is no conflict with any other court proceeding. (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 12-14). Regardless, determining the validity of the Will is outside the jurisdiction of the federal courts. "In [*Sutton v. English*, 246 U.S. 199 (1918)], the court, in an action that was essentially one to annul a will, stated that matters of strict probate are not within the jurisdiction of the federal courts, since the authority to make wills is derived from the states and the requiring of probate is only a regulation to make a will effective." Ronald I. Mirvis, Annotation, *Modern Status of Jurisdiction of Federal Courts, Under 28 U.S.C.A. § 1332(a), of Diversity Actions Affecting Probate or Other Matters Concerning Administration of Decedents' Estates*, 61 A.L.R. Fed. 536 (1983).

"Federal courts have typically examined the application of the probate exception claim by claim." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 214 (D.S.C. 2019) (citing *Chevalier*, 803 F.3d at 801-02). Thus, while the probate exception bars the court from considering Count II, the remaining counts are not barred to the extent that these claims are not based on the invalidity of the Will. Respondents do not argue otherwise. (Patel Bros.' Mem. Supp. Mot. Dismiss 14). Therefore, Count II is dismissed.

### 2.   *Declaratory Judgment Act*

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201 (emphasis added). "While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so." *Encompass Indem. Co. v. Gray*, 434 F. Supp. 3d 560, 569 (W.D. Ky. 2020) (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004)). The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (alteration in original) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "In general, courts should only exercise this discretionary jurisdiction when doing so would further the interests of justice or preserve the parties' resources." *Encompass Indem. Co.*, 434 F. Supp. 3d at 569 (citing *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008)).

In the Sixth Circuit, "[a] proper exercise of discretion under the Declaratory Judgment Act includes a 'reasoned analysis of whether issuing a declaration would be useful and fair.'" *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)). Courts in the Sixth Circuit consider five factors when deciding whether to exercise Declaratory Judgment Act jurisdiction:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W.R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). Although the Court must balance the five factors, the Sixth Circuit has never clarified the relative weights of the factors. *Hoey*, 773 F.3d at 759. Instead, "[t]he relative

7

weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.*

Petitioners ask the Court to enter declaratory judgment in Counts I, II, III, and VII. (1st Am. Pet. ¶¶ 32, 42 (citing 28 U.S.C. § 2201); 2d Am. Pet. ¶ 69).[6]  As stated above, Count II is dismissed, so only Counts I, III, and VII remain.  Respondents first question whether *Grand Trunk* is applicable when there is parallel foreign—not state or even federal—litigation.  (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 15-16).  Even assuming *Grand Trunk* applies, the Court is unable to conduct an informed analysis at this time.  *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) ("Other circuits have built upon this test, to ask also . . . whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court . . . ."  (citing *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994); *Grand Trunk W.R.R. Co.*, 746 F.2d at 326; 10B *Wright & Miller's Federal Practice and Procedure* § 2759 (4th ed. 2026))).  "The *Grand Trunk* factors analysis is heavily fact dependent[,]" and there are insufficient facts regarding the litigation in India in the record to make an informed decision.  *White Pine Ins. Co. v. McIntosh*, No. 5:21-238-KKC, 2022 WL 2512771, at *10 (E.D. Ky. July 6, 2022).  Two purported orders have been filed as exhibits, but further context is needed.  (*See* Resp'ts' Mot. Dismiss Ex. I, DN 50-10; Resp'ts' Mot. Dismiss Ex. J, DN 50-11).  The parties will need to update

---

[6] Petitioners also ask for coercive relief.  (*See* 1st Am. Pet.; 2d Am. Pet.).  "The pairing of a coercive claim with a declaratory claim doesn't affect the district court's unflagging obligation to exercise jurisdiction over the coercive claim."  *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 527 (6th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 507 (Jan. 12, 2026).  "When a declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court must exercise jurisdiction, these equitable considerations will counsel heavily in favor of not abstaining."  *Id.* at 529 (citing *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007)).

the Court regarding the status of the litigation in India, including what orders have been entered and whether any appeals have been filed, and to clarify the bases of those orders and the extent to which the Will and the Agreement are implicated.  Respondents' motion to dismiss these claims is denied at this time.

### B.        Personal Jurisdiction

Under Fed. R. Civ. P. 12(b)(2), a litigant may challenge the Court's authority to entertain for an action for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of establishing that personal jurisdiction is proper.  *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).  "[A]fter the plaintiff makes a prima facie case for personal jurisdiction, which can be done 'merely through the complaint,' the burden shifts to the defendant," who must provide evidence to support the motion to dismiss.  *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)).  That shifts the burden back to the plaintiff, "who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Id.* at 437-38 (internal quotation marks omitted) (citation omitted).

"District courts may proceed through these stages in one of three ways.  The Court may either:  (1) rule on the motion based on the pleadings and affidavits alone; (2) hold an evidentiary hearing to resolve factual questions; or (3) permit limited discovery on the motion."  *Neville v. Salvation Army Nat'l Corp.*, No. 3:25-CV-227-RGJ, 2026 WL 687952, at *18 (W.D. Ky. Mar. 11, 2026) (citation omitted).  The Court has discretion to choose between these alternatives. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  "If, in the complaint, it is unrefuted that the court has no jurisdiction, certainly no hearing or further development of the facts is necessary."  *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, 1995 WL 376722, at *2

(6th Cir. 1995).  The Sixth Circuit has indicated that if the filings rely on a disputed issue of fact, "in order to resolve those issues, the district court should . . . allow[] further discovery or [hold] an evidentiary hearing."  *Id.* (citation omitted); *see Antony v. Disney Enters., Inc.*, No. 18-205-DLB-CJS, 2019 WL 5866586, at *1-2 (E.D. Ky. Aug. 20, 2019); *Neville*, 2026 WL 687952, at *18.

The Court's choice of procedure determines the plaintiff's burden of proof.  *Theunissen*, 935 F.2d at 1458.  When a court rules without conducting an evidentiary hearing, the plaintiff needs to only make a prima facie showing of jurisdiction, and the trial court must consider the pleadings and affidavits in a light most favorable to the plaintiff, without weighing the controverted assertions of the party seeking dismissal.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  If a court orders discovery or holds a hearing, however, then the plaintiff must prove jurisdiction by a preponderance of the evidence.  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Respondents argue that the Court does not have personal jurisdiction over the two Patel brothers who are not domiciled in Kentucky, Bhulabhai and Amrut.  (Patel Bros.' Mem. Supp. Mot. Dismiss 12).  "To exercise [personal] jurisdiction over an out-of-state individual, a federal court must satisfy the long-arm law of the State and federal due process."  *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019) (citing *Miller v. AXA Winterhur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012)).

### 1.    *Kentucky Long-Arm Statute*

When sitting in diversity, a federal court applies the law of the state in which it sits to determine whether personal jurisdiction exists over a non-resident defendant.  *See Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing *Am. Greetings*

10

*Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir. 1988)).   To exercise personal jurisdiction in Kentucky, the Court must determine under Kentucky's long-arm statute, KRS 454.210, whether "the cause of action 'arises from' conduct or activity of the defendant that fits into one of the statute's enumerated categories."[7]  *KFC Corp. v. Wagstaff*, 502 B.R. 484, 495 (W.D. Ky. 2013) (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011)).   This requires a showing of "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction . . . ."  *Caesars Riverboat*, 336 S.W.3d at 59.   If the non-resident defendant's conduct does not fall into one of these enumerated categories, then the defendant is not subject to personal jurisdiction in Kentucky.  *KFC Corp.*, 502 B.R. at 495. "This analysis should be undertaken on a case by case basis, 'giving the benefit of the doubt in favor of jurisdiction.'"  *Fin. Ventures v. King*, 131 F. Supp. 3d 677, 684 (W.D. Ky. 2015) (quoting *Caesars Riverboat*, 336 S.W.3d at 59).

Kentucky's long-arm statute provides that a court may exercise personal jurisdiction over a non-resident defendant for any claims arising from that party "[c]ausing tortious injury by an act or omission in this Commonwealth."  KRS 454.210(2)(c) (2019) (amended 2024).   Petitioners

---

[7] As this Court has noted:

> Until recently, Kentucky's long-arm statute "enumerated" limited bases for personal jurisdiction over out-of-state defendants.  Effective July 15, 2024, courts in Kentucky "may exercise personal jurisdiction over . . . a party . . . on *any basis* consistent with the Constitution of Kentucky and the Constitution of the United States."  Nevertheless, '[the] amendment does not appear to be retroactive' and so the Court must 'apply the long-arm statute that was in effect at the time of filing[.]' . . . [T]his case was filed prior to July 15, 2024, and so the Court looks to KRS § 454.210 (2019) (amended 2024) to determine whether a Kentucky court would have specific jurisdiction over Defendants."

*Banet v. Cooper Cos.*, No. 4:24-CV-029-RGJ, 2025 WL 2810675, at *3 (W.D. Ky. Sep. 30, 2025) (internal citations omitted (citation omitted).

11

argue that their claims arise from "Respondents' Kentucky-based actions." (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 7). Specifically, the allegedly forged documents were created, witnessed, and notarized in Kentucky. (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 8).

Starting with the Agreement, Petitioners argue in their response that both Bhulabhai and Amrut appeared in Kentucky before the notary, evidenced by the Will and the Agreement.[8] (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 9). In the First Amended Petition, however, Petitioners allege that Bhulabhai and Amrut did not actually sign the Agreement. (1st Am. Pet. ¶ 32). Petitioners may not contradict their own pleadings in an attempt to secure jurisdiction. *Cf. Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1015-16 (S.D. Ohio 2016) ("While Rule 8(d)(3) allows inconsistent claims—a plaintiff may, for example, bring claims for both intentional and unintentional torts, even where recovery on both would impossible—it does not allow what Plaintiffs are attempting to do here—namely, to make 'clashing factual assertions . . . in the context of the same claim.'" (citation omitted)); *Daughtry v. Graham Shrimp Co.*, No. 23-00366-JB-MU, 2024 WL 231849, at *2 (S.D. Ala. Jan. 22, 2024) ("However, Plaintiff 'cannot supplement the allegations of the Complaint through a brief in response to a motion to dismiss, and Plaintiff certainly cannot contradict the allegations in the Complaint with a response to a [m]otion to [d]ismiss.'" (alterations in original) (citation omitted)).

Next, Petitioners allege that Bhulabhai witnessed the Will, and though they allege that Laxmiben did not sign it and the notary did not attest it prior to Laxmiben's death, they do not claim that Bhulabhai's signature was forged. (1st Am. Pet. ¶ 35). Because the fraudulent creation or notarization of the Will provides a basis for Petitioners' civil conspiracy claim, there is a

---

[8] Both documents were attached to the First Amended Petition. (1st Am. Pet. Ex. F, DN 16-6; 1st Am. Pet. Ex. G, DN 16-7).

12

reasonable and direct nexus between Bhulabhai's alleged acts in Kentucky and Petitioners' injury. *See Caesars Riverboat*, 336 S.W.3d at 59.  There is no allegation, however, that Amrut witnessed the Will, so there is no personal jurisdiction over him for this civil conspiracy claim.  (*See* 1st Am. Pet. ¶¶ 33-42).

Alternatively, Petitioners assert that because Bhulabhai and Amrut "acted in concert" with Respondents to forge these documents, they are subject to conspiracy jurisdiction in Kentucky, regardless of their physical presence in the state.[9]  (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 8).  No cases cited by Petitioners support this assertion and Petitioners do not meaningfully argue that the conspiracy theory of jurisdiction applies under the Kentucky long-arm statute.  (*See* Pet'rs' Resp. Patel Bros.' Mot. Dismiss 8 (citing *Cummings v. Pitman*, 239 S.W.3d 77 (Ky. 2007); *Caesars Riverboat*, 336 S.W.3d at 58-59)).  The Court will not address a novel issue of state law without the benefit of Petitioners' briefing the issue.[10]  *Conto v. MK Ventures, LLC*, No. 5:25-CV-00320-

---

[9] In a conspiracy, every member "is liable for the acts of every other member, because the law considers each member of the conspiracy to be the agent of the other members." *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006) (citations omitted).  Our sister court has explained:

> This basic concept may be applied in determining whether personal jurisdiction exists over an alleged co-conspirator.  Simply put, if one co-conspirator commits acts in the forum which would justify the forum court in exercising personal jurisdiction over it, those acts are attributed to the other co-conspirators and personal jurisdiction exists over them as well.

*Id.*; *see Neogen Corp. v. U.S. Dep't of Just.*, No. 05-506-JBC, 2006 WL 3422691, at *6 (E.D. Ky. Nov. 28, 2006).  To establish jurisdiction under this theory, "a plaintiff must allege: (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy and; (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Neogen Corp.*, 2006 WL 3422691, at *6 (citing *Ky. Speedway*, 410 F. Supp. 2d at 599). Additionally, "[a] plaintiff must make some 'minimal factual showing' of a non-resident's part in a conspiracy before a court can constitutionally exercise personal jurisdiction under the conspiracy test . . . ." *Id.* (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981)).

[10] The applicability of conspiracy jurisdiction is not a forgone conclusion:  Several states and federal circuits have arrived at differing conclusions.  Peter Spero, *Fraudulent Transfers,*

GFVT, 2026 WL 887386, at *2 (E.D. Ky. Mar. 31, 2026) ("Defendant having failed to make any meaningful argument in support of this basis for dismissal, the Court declines to undertake the effort for it. It is, instead, forfeited." (citing *Lipman v. Budish*, 974 F.3d 726, 749 (6th Cir. 2020); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). Thus, the Court has personal jurisdiction under the Kentucky long-arm statute over Bhulabhai, but not Amrut.

### 2.    *Federal Due Process*

Personal jurisdiction has two forms: general and specific. *See AXA Winterthur*, 694 F.3d at 678-79. General jurisdiction arises when a defendant has affiliations so "continuous and systematic" with a forum as to render it "essentially at home" there, thus allowing courts in that forum to exercise jurisdiction over any and all claims against it. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Specific jurisdiction, on the other hand, arises from "minimum contacts" between a person and the forum, and permits the forum's courts to adjudicate "issues deriving from, or connected with," those particular contacts. *Id.* (citation omitted).

Petitioners assert only specific jurisdiction. (*See* Pet'rs' Resp. Patel Bros.' Mot. Dismiss 9-12). The Sixth Circuit uses the following criteria to determine whether to exercise specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

---

*Prebankruptcy Planning and Exemptions* § 18:19.50 (2025). Indeed, "the Sixth Circuit has neither adopted nor rejected a 'conspiracy' theory of personal jurisdiction, [and] district courts within the Sixth Circuit have split on the question." *DayCab Co., Inc. v. Prairie Tech., LLC*, No. 3:20-CV-63, 2021 WL 6275629, at *5 (E.D. Tenn. Aug. 13, 2021) (citations omitted). Moreover, as stated by the Sixth Circuit: "When sitting in diversity, '[w]ithout some authoritative signal from the state's legislature or judiciary" federal courts 'should be extremely cautious about adopting "substantive innovation" in state law.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 903 (6th Cir. 2021) (alteration in original) (quoting *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015)).

14

must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  "If any of the three requirements is not met, personal jurisdiction may not be invoked."  *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 981 (M.D. Tenn. 2024) (quoting *AXA Winterthur*, 694 F.3d at 680).

"Purposeful availment, the constitutional touchstone of personal jurisdiction, is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State . . . ."  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (internal quotation marks omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Id.* (internal quotation marks omitted) (citing *Burger King*, 471 U.S. at 475).  By acting as a witness to the Will in Kentucky and allegedly misusing Kentucky notarial authority as part of a conspiracy, Bhulabhai purposefully availed himself of the privilege of acting in Kentucky.  *See Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478-79 (6th Cir. 2003) ("The emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some overt actions connecting the defendant with the forum state.'" (quoting *Dean*, 134 F.3d at 1274)).

Next, "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) (citation omitted).  Bhulabhai's contacts with

15

Kentucky are related to the operative facts here: He allegedly acted as a witness to the Will, which Petitioners assert was fraudulently created and notarized as part of the civil conspiracy claim.

Finally, in analyzing the reasonableness of exercising jurisdiction, the Sixth Circuit considers "a number of factors, including: '(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554-55 (6th Cir. 2007)). There is, however, "an inference of reasonableness when the first two . . . prongs are satisfied," and as "there are no considerations put forward by [Respondents] to overcome or contradict that inference," "the exercise of jurisdiction is reasonable under the circumstances of this case." *Air Prods.*, 503 F.3d at 555. Thus, it is reasonable for this Court to exercise personal jurisdiction over Bhulabhai.

### C.      Failure to State a Claim

When considering a Rule 12(b)(6) motion, a court "must construe the complaint in the light most favorable to [the] plaintiff[] . . . ." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). A court must also accept all of a plaintiff's allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this standard is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

16

### 1. *1987 Power of Attorney*

Respondents first argue that the entire Second Amended Petition—which incorporates the claims raised in the First Amended Petition—should be dismissed because a 1987 Power of Attorney Agreement establishes that Petitioners have no legal interest or rights in the Property. (Patel Bros.' Mem. Supp. Mot. Dismiss 10). In relevant part, Fed. R. Civ. P. 12 provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Thus, the Court will consider only the pleadings and any materials falling into a recognized exception, i.e., those referenced in and central to First Amended Petition or Second Amended Petition. *See Wershe v. City of Detroit*, 112 F.4th 357, 373 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1128 (2025). The Court will therefore not consider the effect of the 1987 Power of Attorney at this stage. *See id.* ("[W]hile this Circuit's case law permits the district court to consider such evidence at the motion to dismiss stage if it is central to the plaintiff's claims, nothing requires the district court to do so." (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### 2. *Conspiracy*

Next, Respondents argue that Petitioners fail to state a claim for civil conspiracy. (Patel Bros.' Mem. Supp. Mot. Dismiss 17). "A civil-conspiracy claim requires the plaintiff to show 'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 594 (Ky. 2021) (footnote omitted).

> To show concerted action, a "plaintiff must show Defendants were either 'directly involved with the tortious act, [knew] of the tortious act and provide[d] substantial assistance or encouragement with respect thereto, or provide[d] substantial

17

assistance to another who achieves a tortious result, while his own acts separately constitute a breach of duty to the third person who was harmed." However, "mere negligence [on the part of the defendants] is not sufficient to support a claim for civil conspiracy."

*Grayiel v. AIO Holdings, LLC*, 648 F. Supp. 3d 812, 877 (W.D. Ky. 2022) (internal citation omitted) (citations omitted).

"[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Eifler v. Greenamyer*, No. 2017-CA-000079-MR, 2019 WL 2712618, at *7 (Ky. App. June 28, 2019) (citation omitted). "[W]here . . . the underlying tort is fraudulent in nature, courts have required that plaintiffs pleading civil conspiracy meet the heightened pleading requirements of Civil Rule 9(b) to survive dismissal." *In re Brohl*, No. 25-47781-PRH, 2026 WL 811400, at *5 (Bankr. E.D. Mich. Mar. 23, 2026) (citing *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1323 (E.D. Mich. 2011)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Respondents contend that Petitioners have not alleged an underlying tortious act. (Patel Bros.' Mem. Supp. Mot. Dismiss 17). The First Amended Petition alleges that Respondents' "object of the claim of combination was to impair and bar [] Petitioners' claim of title to the family real estate in India." (1st Am. Pet. ¶ 49). In their response, Petitioners assert that they have alleged a conspiracy based on fraud, forgery, and falsification of notarial acts. (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 17-18). The circumstances surrounding the disputed documents are described in the First Amended Petition and the documents themselves are attached as exhibits to that pleading. (1st Am. Pet. ¶¶ 3, 5-6, 28-50; 1st Am. Pet. Ex. F; 1st Am. Pet. Ex. G). Thus, Petitioners have sufficiently alleged underlying tortious acts.

18

Respondents also assert that Petitioners make no factual allegations regarding the involvement of the Patel Brothers—Bhulabhai, Amrut,[11] Mangubhai, and Narendra—in the conspiracy. (Patel Bros.' Mem. Supp. Mot. Dismiss 17-18). In their response, Petitioners declare that they have made "detailed allegations" but do not point to any allegation of Bhulabhai's, Mangibhai's, or Narendra's specific involvement. (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 18). Looking at the pleadings as a whole, Petitioners allege the Patel Brothers either signed the disputed documents or allowed their signatures to be forged by the notary, knowingly relied on the fraudulent notarization in the Indian litigation, and benefited from the fraudulent documents. (1st Am. Pet. ¶¶ 32, 35, 48-50; 2d Am. Pet. ¶¶ 79, 81).

At this stage, these factual allegations are sufficient to maintain a claim for civil conspiracy against the Patel Brothers.

### 3.   *Willful Misconduct*

Respondents argue that Petitioners have not cited any law indicating that Kentucky recognizes willful misconduct as a free-standing tort or identified the elements of such a claim. (Resp'ts' Reply Mot. Dismiss 7, DN 62 [hereinafter Patel Bros.' Reply Mot. Dismiss]). It appears questionable whether "willful misconduct" is a viable claim, but

Respondents may not raise an issue for the first time in their reply, so their motion to dismiss is denied on that basis. *Blankenship v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:23-CV-235-RGJ, 2024 WL 1221180, at *3 (W.D. Ky. Mar. 21, 2024) ("[N]one of Metro's arguments regarding the specific elements of a *Monell* claim in its reply appear anywhere in its motion to dismiss. As such, these arguments that do not involve standing are waived." (internal citation omitted) (citing *Scottsdale Ins. Co.*, 513 F.3d at 553; *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730

---

[11] There is no personal jurisdiction, however, over Amrut, as discussed above.

(M.D. Tenn. 2019); *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012)); *see ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 740 (M.D. Tenn. 2021) ("In reviewing a Rule 12(b)(6) motion to dismiss, '[t]he moving party has the burden of proving that no claim exists.' . . . . [S]ince the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." (internal citation omitted)).

### 4. *Apostille Convention*

This Court has already addressed whether Count VII, seeking a declaration that the two notarized documents are void ad initio and do not comply with the procedural requirements of the Apostille Convention, would survive a motion to dismiss. (Mem. Op. & Order 4-6, DN 48) (granting Petitioners' motion to amend because amendment was not futile). The Court stated that Petitioners only "ask whether, under U.S. law, these documents were properly certified for international use." (Mem. Op. & Order 5). Petitioners' claim, construed narrowly, survives a motion to dismiss for the reasons previously stated. (Mem. Op. & Order 4-6).

Yet Petitioners do not characterize their claim that way in their response; they ask for a declaratory judgment "that the underlying notarial certificates were invalid because they were not issued in conformity with the Apostille Convention" and "that the Notary Respondents' issuance of falsified certificates violated a federal duty derived from the Apostille Convention and that those acts are void of legal effect internationally." (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 21). These characterizations are inappropriate. The lack of conformity with the Apostille Convention would not affect the validity of the documents in the United States, and as stated in this Court's prior order, the Court will not opine on the effect of these documents in foreign legal systems. Petitioners did not ask for a declaratory judgment regarding the notary's compliance with the

"federal duty derived from the Apostille Convention" not to falsify certificates, nor is the Court aware of such a duty; regardless, Petitioners may not expand the scope of their requested declaration now.  (Pet'rs' Resp. Patel Bros.' Mot. Dismiss 21); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).  Accordingly, the Court will only consider "whether, under U.S. law, these documents were properly certified for international use."  (Mem. Op. & Order 4-6).

### 5.    *RICO*

Though this Court previously ruled that Petitioners' RICO claim would survive a motion to dismiss, Respondents now raise new arguments for dismissal.  (Mem. Op. & Order 8; Patel Bros.' Mem. Supp. Mot. Dismiss 23-27).

To state a RICO claim, a plaintiff must allege defendant's violation of one or more provisions of 18 U.S.C. § 1962.  *Hilliard v. Shell W. E & P, Inc.*, 885 F. Supp. 169, 173 (W.D. Mich. 1995) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985)).  Petitioners bring their RICO claim specifically under section 1962(b), which states that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b); (*see* 2d Am. Pet. ¶¶ 13-14, 70-84 Pet'rs' Resp. Patel Bros.' Mot. Dismiss 25-27).  The Sixth Circuit has held:

> Because the civil RICO statute "authorizes recovery only for injury that a plaintiff suffers 'by reason of' the RICO violation," a claim "for violation of § 1962(b) must allege an 'acquisition or maintenance' injury *separate and apart from the injury suffered as a result of the predicate acts of racketeering activity*."

*Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 458 (6th Cir. 2019) (quoting *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999)).

Respondents argue that "Petitioners have not alleged how they were injured by any defendant gaining an interest in or control of an enterprise." (Patel Bros.' Mem. Supp. Mot. Dismiss 26). Indeed, although Petitioners repeatedly allege that they were injured by the loss of their interest in the Indian property, they have not alleged that this injury occurred because of Respondents' alleged racketeering activity and do not allege any injury that occurred because Respondents acquired or controlled an enterprise. (*See* 2d Am. Compl. ¶¶ 70-84).

Accordingly, Petitioners have failed to state a claim under 18 U.S.C. § 1962(b), so Respondents' motion to dismiss will be granted as to this claim.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss (DN 50) and Respondents' Motion to Dismiss (DN 52) are **GRANTED IN PART** and **DENIED IN PART**. Count II and Count VIII of the Second Amended Petition and all claims against Amrut Patel are **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Judge
United States District Court
July 7, 2026

cc:   counsel of record

22